TERRELL CHURCHWELL,

      Plaintiff,      Case No. 1:19-cv-819

v.              Honorable Janet T. Neff

UNKNOWN PARTY et al.,

      Defendants.
_____/

## **OPINION**

    This is a civil rights action brought under 42 U.S.C. § 1983 by a federal prisoner, seeking relief for alleged constitutional violations that occurred while he was housed in a Michigan jail. Plaintiff has been granted leave to proceed *in forma pauperis*, though he has since paid the full filing fee. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's amended complaint[1] for failure to state a claim against

---

[1] Plaintiff filed two motions to amend his complaint (ECF Nos. 10, 11). Under Fed. R. Civ. P. 15(a), a party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served. Because Plaintiff's first motion to amend did not include a proposed amended complaint and instead asked the Court to substitute words from the motion into the original complaint, Plaintiff's first motion will be denied. Plaintiff, however, has attached a proposed amended complaint (ECF No. 11-1) to his second motion. Plaintiff's second motion therefore will be granted. Plaintiff, however, acknowledges that he has misplaced the first two pages of his original complaint,

Defendants Unknown Party and Ashcroft. The Court also will dismiss Plaintiff's equal protection and procedural due process claims against Defendants Rich, Crosby, and Wildfong. The Court will order the complaint served on Defendants Rich, Crosby, and Wildfong.

## Discussion

### I. Factual allegations

Plaintiff presently is incarcerated with the Bureau of Prisons at the Oxford Federal Correctional Institution in Oxford, Wisconsin. The events about which he complains, however, occurred while Plaintiff was housed at the Newaygo County Jail (NCJ) as a pretrial detainee. Plaintiff sues the following NCJ officials: the unknown administrative sergeant or sheriff (Unknown Party); Administrative Sergeant Adam Rich; Sergeant Cliff Ashcroft; Corporal April Crosby; and Duty Officer Rocky Wildfong.

According to the amended complaint, Plaintiff was moved from NCJ cell A-7 to cell A-1. As he was unpacking his property, he noticed that some items (ramen noodles and chips) were missing. Plaintiff began yelling out his food slot to get the attention of the floor officer. Officer Brian Lake (not a Defendant) came to Plaintiff's cell and heard his complaint. Lake left and returned shortly thereafter, reporting that Plaintiff's prior cellmates had no knowledge of the missing food. Plaintiff asked Lake to review the video camera for Plaintiff's prior bunk area, but Lake refused. Plaintiff then asked Lake to summon Defendant Crosby, but Lake refused.

Plaintiff yelled for Lake again a few minutes later, complaining loudly about his missing food, his lack of expectation of receiving money to buy new food, how he witnessed another officer retrieve stolen property for a different inmate, and his belief that he was being

---

which he intended to attach to the beginning of his proposed amended complaint. The Clerk shall copy the first two pages of the original complaint (ECF No. 1, PageID.1-2), attach the pages to the beginning of Plaintiff's proposed amended complaint (ECF No. 11-1), and docket all pages as an amended complaint.

treated differently. Lake returned to Plaintiff's cell and, in response to Plaintiff's request, radioed Defendant Crosby. A few minutes later, both Lake and Defendant Crosby came to Plaintiff's cell. Plaintiff explained to Defendant Crosby that he believed his property was taken while he was being interviewed by Defendant Crosby, and he asked Crosby to look at the video recording. Defendant Crosby refused, but she left to interview Plaintiff's old cellmates. Defendant Crosby returned, reporting that the cellmates had no knowledge of the missing property.

Plaintiff then asked to speak with Defendant Rich. Defendant Crosby admonished Plaintiff, advising him that her investigation was sufficient. Crosby also denied Plaintiff's request for a grievance form. Plaintiff told Crosby that he had a right to fair treatment and that, if she refused to provide a grievance form or call Defendant Rich, he would begin yelling for Rich. Defendant Crosby left, closing the food slot and the door to the area where Defendant Rich was located.

Plaintiff began yelling loudly for Defendant Rich and knocking on the door. After some time, Defendant Rich, accompanied by Defendants Crosby and Wildfong and non-Defendant Officers Holly, Filenna, Brian (Lake), and Dan, appeared at Plaintiff's cell. Defendant Rich ordered Plaintiff to face away from the officers and to place his hands above his head and on the wall. Plaintiff began crying and attempted to explain his yelling and banging on the door. Defendant Rich pointed a taser at Plaintiff's chest and again ordered him to turn around and put his hands on the wall. Plaintiff complied. Officers entered the cell and handcuffed and shackled Plaintiff.

Plaintiff contends that he was compliant, though he still tried to explain his yelling to Defendant Rich. Rich ordered another officer to get a restraint chair. When the chair arrived, Plaintiff was placed in the chair. Officer Filenna placed both of her hands under Plaintiff's chin

3

and pulled his head back while officers strapped Plaintiff across his shoulders and strapped his ankles. Plaintiff's hands remained handcuffed, and his legs were shackled. Now held motionless, Plaintiff continued to cry and asked how long he would be kept strapped and shackled. Defendant Rich told Plaintiff that it could be as long as two hours, depending on how quiet Plaintiff would be.

After Plaintiff was silent for an hour, he began experiencing numbness in his arms, waist and shoulder areas, and he began feeling dizzy and upset about his treatment. Plaintiff began yelling for Defendant Rich. Defendant Crosby arrived with Officer Lake. Lake attempted to uncuff Plaintiff, but Defendant Crosby told Lake to put the cuffs back on, as Plaintiff had not remained quiet long enough. Defendant Crosby ignored Plaintiff's complaints about pain and numbness. Crosby and Lake left, and Plaintiff remained silent for another half hour. Plaintiff then began to experience chest pains, numb arms, and disorientation. He therefore began calling Defendant Rich again. When Rich arrived, he informed Plaintiff that, since he had yelled again, he was being taken to segregation.

Defendant Wildfong and Officer Lake began to escort Plaintiff to segregation, accompanied by the officers who had placed Plaintiff in the chair. Plaintiff alleges that he saw Defendant Crosby "smirking" at him, so he called her "ugly." (Proposed Am. Compl., ECF No. 11-1, PageID.65.) Defendant Wildfong shoved Plaintiff face-first into the concrete wall, pulled back, and bashed Plaintiff's face into the wall again, yelling, "[D]on't ever call her that again motherf\*\*ker." (*Id.*) As the result of Defendant Wildfong's actions, Plaintiff suffered a chipped

4

tooth, facial swelling, and a split lip that started to bleed. Plaintiff began to cry, "You shed my blood." (*Id.*, PageID.66.)

Once Plaintiff arrived at the segregation cell, the officers laid Plaintiff flat on his metal bunk while he was still handcuffed. Plaintiff allegedly was not resisting, though he continued to cry, "You shed my blood." (*Id.*) Nevertheless, multiple officers knelt on Plaintiff's neck and back, allegedly using unnecessary force. Officers then uncuffed and unshackled Plaintiff and left the cell.

Plaintiff asked Defendant Rich for a grievance form. Rich responded that he was not authorized to provide a form, but he would ask Defendant Ashcroft. Plaintiff again began sobbing and crying about his blood being shed. Less than an hour later, a nurse treated Plaintiff, using alcohol pads and administering antibiotic ointment to Plaintiff's lacerations. The nurse advised Plaintiff that she would issue an icepack, but it was up to the custody officers to decide whether Plaintiff could have it.

The day after Plaintiff was placed in segregation, Defendant Wildfong refused to give Plaintiff a meal. During the two months Plaintiff spent in segregation, he was restricted from all of the following: using the telephone; purchasing telephone minutes; receiving in-person visits; purchasing stamps, hygiene products, underwear and socks; meeting with clergy or possessing a bible; and participating in recreation of any sort. Also during this time, Plaintiff's cell allegedly was kept so cold that he could not stay warm, even when covered. Plaintiff alleges that he had no socks, sandals, or underwear and that the thermostat was within the knowledge and control of Defendant Crosby. In addition, Plaintiff complains that, during the 60 days of his segregation, he daily requested a grievance form from all Defendants, including Defendant Ashcroft, without

success. Plaintiff also contends that he did not receive a hearing on his segregation for three weeks, at which time Defendant Unknown Party affirmed all restrictions.

On February 7, 2017, Defendant Wildfong escorted Plaintiff (uncuffed and unshackled) to the psychiatric/psychological examiner. While Plaintiff was meeting with the examiner, Officer Holly entered the session in order to handcuff and shackle Plaintiff, as directed by Defendant Rich. The examiner, however, requested that cuffs not be used on one of Plaintiff's hands so that he could write the answers necessary to the examination.

Plaintiff asked to see Ken from Community Mental Health. He met with Ken a few days later. Plaintiff complained about his treatment, indicating that he did not feel like a human anymore. Ken made copies of a letter Plaintiff wrote about the alleged abuses and told Plaintiff that he was willing to send the letter to the judge. Plaintiff feared taking the matter to the judge, so Ken did not send the letter.

On February 9, 2017, Plaintiff was shackled and escorted to meet with his attorney on the criminal matter. Plaintiff asked his attorney to assist him, because, while he remained in segregation, Plaintiff was not permitted to use the law library. Plaintiff's attorney responded that there was nothing he could do beyond advising jail staff that Plaintiff may become a pro se litigant who would need access to the law library.

When Plaintiff returned to his cell, he discovered that officers had taken the food he had saved from breakfast. Plaintiff told Officer Tyler (not a Defendant) that the officers may as well kill him. Upon hearing the statement, Tyler instructed Plaintiff to cuff up again. Tyler then informed Defendant Crosby that Plaintiff had made a statement about killing himself. Defendant Crosby got a restraint chair. Ignoring Plaintiff's statement that he had not expressed an intent to kill himself, Defendant Crosby placed Plaintiff in a restraint chair for two hours. At the

end of this time, Officer Gabe (not a Defendant) removed the restraints and asked why Plaintiff had been placed in the chair. Plaintiff explained that that his food had been taken and that he told the officers they may as well kill him. Officer Gabe told Plaintiff that saving food was technically against the rules, though sometimes permitted. Plaintiff acknowledged that he understood.

Plaintiff was placed in a holding cell for three days. He met with Ken from Community Mental Health on February 13, 2017. Plaintiff explained that he was not suicidal, but that, with everything that had happened, he did not know what was becoming of him. Plaintiff was returned to segregation the following day. Plaintiff asked Defendant Ashcroft who he could write about the circumstances of his confinement. Defendant Ashcroft gave Plaintiff the name of Newaygo County Judge Drake. When Plaintiff asked the address, Ashcroft told Plaintiff that he did not know, but that it should be the same address as the NCJ. Plaintiff wrote to Judge Drake about his treatment and circumstances and gave the sealed letter to Defendant Ashcroft. Two days later, the letter was returned to Plaintiff by Defendant Ashcroft, unsealed and labeled "wrong address." (*Id.*, PageID.71.)

Several days later, on February 27, 2017, Plaintiff spoke with Officer Gabe about the totality of his cell conditions and inability to file a grievance. Officer Gabe advised Plaintiff to write a letter to the United States Marshal, which Gabe would deliver. On March 1, 2017, the United States Marshal transferred Plaintiff to the Kalamazoo County Jail (KCJ). After Plaintiff had been at the jail for several months, he wrote to the Marshal about the lack of legal resources at the KCJ, which prevented Plaintiff, a pro se criminal defendant, from accessing the library. The Marshal returned Plaintiff to the NCJ, where he had access to legal materials.

When Plaintiff returned to NCJ, he began again to demand grievance forms. Defendant Crosby denied him a form, stating that it would be a conflict of interest for her to give

him a form to complain about herself and her colleagues. Plaintiff was denied access to the grievance procedure from June to December 2017. Sometime in November, Officer Nancy (not a Defendant) told Plaintiff that she would get him a grievance form. Officer Nancy returned to Plaintiff's cell with Defendant Ashcroft, who explained to Plaintiff that his issues were not grievable. Officer Nancy later explained that she would be a witness to the denial of a grievance form.

During December 2017, Plaintiff spoke to Officer Gabe, who advised Plaintiff to write to the unknown administrative sergeant (Defendant Unknown Party) to request permission to grieve. Plaintiff wrote a letter and gave it to Officer Gabe, who delivered it to Defendant Unknown Party. Days later, Officer Gabe brought a one-page grievance form to Plaintiff, explaining that Defendant Unknown Party would allow Plaintiff to grieve his issues, with the exception of the excessive-force claims (because they were time-barred) and the food-refusal claim (as Defendant Unknown Party had brought Plaintiff a meal after Defendant Wildfong refused to give him one). Plaintiff filed a grievance about being denied a grievance form and grievance procedure. Plaintiff was transferred a week later.

Plaintiff asserts that his placement in the restraint chair for lengthy periods on two occasions, the use of excessive force by Wildfong, and the conditions of his confinement in segregation (including the cold temperatures and lack of exercise) violated his substantive due process rights under the Fourteenth Amendment. In addition, he alleges that the delay in his receiving a hearing about his placement in segregation violated his right to procedural due process under the Fourteenth Amendment. Plaintiff further alleges that Defendants violated his right to

procedural due process by not permitting him to file grievances. Plaintiff also vaguely alleges that he was deprived of his Fourteenth Amendment right to equal protection.

Plaintiff seeks compensatory and punitive damages.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the

*Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Procedural Due Process

Plaintiff contends that he was deprived of his right to procedural due process in three ways. First, he asserts that he did not receive a hearing on his transfer to segregation until three weeks after his placement there. Second, he alleges that all Defendants deprived him of his right to file grievances. Third, Plaintiff suggests that his personal property was taken without due process.

#### A. Segregation

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v.*

*Thompson*, 490 U.S. 454, 460 (1989). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano,* 427 U.S. 215, 225 (1976). In *Sandin v. Conner,* 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 486-87; *see also Jones v. Baker,* 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir. 1995).

Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484. Similarly, the Sixth Circuit has held that mere placement in administrative segregation, and placement for a relatively short period of time, do not require the protections of due process. *Rimmer-Bey,* 62 F.3d at 790-91; *see Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant). The Sixth Circuit has also held, in specific circumstances, that confinement in segregation for a relatively long period of time

11

does not implicate a liberty interest. *See, e.g.*, *Baker,* 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). *But cf. Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest). According to the allegations in the amended complaint, Plaintiff remained in segregation for 60 days, less than the time at issue in *Joseph,* 410 F. App'x at 868, and *Mackey,* 111 F.3d 460, which the Sixth Circuit found not to be atypical or significant.

Moreover, nothing about the conditions of Plaintiff's segregation at the NCJ were so unusual and extreme to implicate due process, irrespective of the length of time Plaintiff spent in segregation. In *Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005), the Supreme Court applied the rule of *Sandin* to conclude that Ohio's "Supermax" prison facilities imposed a sufficiently atypical and significant hardship to create a liberty interest implicating due process. In reaching its decision, the Court focused on the unusually severe limitations on prisoners in Supermax facilities: extreme limitations on human contact; 24-hour lighting in cells; and automatic exclusion from consideration on parole for those placed in Supermax. Plaintiff's allegations utterly fail to exceed the sorts of ordinary segregation at issue in *Sandin*.

Further, even assuming that Plaintiff had a liberty interest in his segregation placement, his allegations failed to show that he was denied due process. A due process claim "is

not complete unless and until the State fails to provide due process." *Zinermon v. Burch,* 494 U.S. 113, 126 (1990). The Supreme Court has indicated that "[p]rison officials must engage in some sort of periodic review of the confinement of . . . inmates [in segregation]." *Hewitt,* 459 U.S. at 477 n.9. "This review will not necessarily require that prison officials permit the submission of any additional evidence or statements." *Id.* However, the decision to continue confinement must be supported by "some evidence." *Superintendent v. Hill,* 472 U.S. 445, 454 (1985). "This requirement balances the procedural rights of prisoner against the need of prison officials to have freedom to operate their facilities on a day-to-day basis." *Harris,* 465 F. App'x at 484. In short, where an inmate's confinement in segregation implicates a liberty interest, he is entitled to a "periodic review of his confinement, supported by some evidence or indicia of reliability." *Id.* at 485; *see also Selby*, 734 F.3d at 559-60 (holding that the mere formality of holding reviews is not sufficient; whether a given process is meaningful and adequate is a question of fact).

Here, Plaintiff acknowledges that he received a hearing on his segregation after only three weeks. Plaintiff alleges no defect in the hearing process, though he suggests that he was unhappy with the result. It therefore appears that Plaintiff received all of the process to which he was entitled.

### B. Denial of grievance forms

To the extent that he alleges that Defendants deprived him of due process by denying grievance forms, Plaintiff fails to state a claim. Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th

Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct in denying grievance forms did not deprive Plaintiff of due process.

### C. Taking of property

Plaintiff alleges that unknown individuals took his snacks and other personal property and that Defendants effectively deprived him of that property by refusing to review the video to determine the culprit.

Plaintiff's factual allegations suggest that Defendants acted with negligence only. "[P]rocedural due process prohibits arbitrary and unfair deprivations of protected life, liberty, or property interests without procedural safeguards." *Howard v. Grinage*, 82 F.3d 1343, 1349-50 (6th Cir. 1996) (citing *Daniels v. Williams*, 474 U.S. 327 (1986)). A claim of negligence is insufficient to support a § 1983 claim. *Daniels*, 474 U.S. at 333-36. Instead, to state a procedural due process claim, a plaintiff must allege a constitutionally arbitrary deprivation. *Id.*; *Howard*, 82 F.3d at 1350 ("'[A]rbitrary in the constitutional sense' for procedural due process purposes means conduct undertaken with something more than negligence.") (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 129 (1992)). To state a claim based on the deprivation of procedural due

process, the "conduct must be grossly negligent, deliberately indifferent, or intentional." *Howard*, 82 F.3d at 1350.

Plaintiff's allegations fall short of gross negligence, deliberate indifference, or intentionality. Indeed, two officials investigated Plaintiff's complaint about his missing property, speaking with other prisoners housed in Plaintiff's old cell. The fact that Officer Lake and Defendant Crosby did not review video records that may or may not have shown the culprit does not rise above simple negligence. Plaintiff therefore fails to state a procedural due process claim on this basis.

### IV. Supervisory Liability

Plaintiff arguably suggests that Defendants Unknown Party and Ashcroft are liable for the conduct of their subordinates. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants

Unknown Party and Ashcroft engaged in any active unconstitutional behavior, beyond any failure to provide grievance forms or act on Plaintiff's complaints about other officers. Accordingly, to the extent that Plaintiff intends to allege that Defendants Unknown Party and Ashcroft failed to supervise their subordinates, he fails to state a claim against them.

## V.  Equal Protection

Plaintiff conclusorily asserts that he has been denied his right to equal protection. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'").

Although Plaintiff alleges that Defendants treated him poorly, he does not allege how he was treated differently than any other prisoner who was similarly situated. Absent such allegations of disparate treatment, Plaintiff has failed to state an equal protection claim. Moreover, conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

## VI.  Substantive Due Process

Plaintiff alleges that Defendants used excessive force when they placed him in a restraint chair for two hours while he was cuffed and shackled, ignoring his claims of extreme pain

16

and numbness. He also alleges that Defendant Wildfong used excessive force when he slammed Plaintiff's face into the wall multiple times. Further, Plaintiff alleges that Defendants Crosby, Rich, and Wildfong subjected him to cruel conditions when they kept him in segregation at extremely low temperatures and without access to exercise or a bible.

"Excessive force claims can be resolved under the Fourth, Eighth and Fourteenth Amendments – the applicable amendment depends on the plaintiff's status at the time of the incident: a free citizen in the process of being arrested or seized; a convicted prisoner; or someone in 'gray area[s]' around the two." *Coley v. Lucas Cty.*, 799 F.3d 530, 537 (6th Cir. 2015) (quoting *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013)); *see also Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002). When a free citizen claims that a government actor used excessive force during the process of an arrest, seizure, or investigatory stop, the courts perform a Fourth Amendment inquiry into what was objectively "reasonable" under the circumstances. *Graham v. Connor*, 490 U.S. 386, 396 (1989); *Lanman v. Hinson*, 529 F.3d 673, 680 (6th Cir. 2008). In addition, in order to violate the rights of free citizens unrelated to a search or seizure, the conduct of law enforcement officials must "shock[] the conscience," whether it be "malicious and sadistic" behavior in the context of a "fluid" and "dangerous" situation, or "deliberate indifference" when there is "reasonable opportunity to deliberate" before taking action. *Darrah v. City of Oak Park*, 255 F.3d 301, 306 (6th Cir. 2001) (internal quotation marks omitted); *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846-53 (1998). In contrast, when convicted prisoners bring claims of excessive force, courts look to the Eighth Amendment, which forbids the "unnecessary and wanton infliction of pain" that constitutes "cruel and unusual punishment," and specifically conduct that is malicious and sadistic.

*Hudson v. McMillian*, 503 U.S. 1, 5, 7 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)); *United States v. Budd*, 496 F.3d 517, 531-32 (6th Cir. 2007).

Until relatively recently, however, it was unclear which standard applied to excessive force claims brought by pretrial detainees. The Supreme Court has since clarified that, when assessing a pretrial detainee's excessive force claim, a court must inquire into "whether the plaintiff shows 'that the force purposely or knowingly used against him was objectively unreasonable.'" *Coley*, 799 F.3d at 538 (quoting *Kingsley v. Hendrickson*, 576 U.S. ___, 135 S. Ct. 2466, 2473 (2015)). The inquiry is highly fact-dependent and must take into account the "perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley*, 135 S. Ct. at 2473. A court must also consider "the "'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 540, 547 (1979)). The *Kingsley* Court identified a nonexclusive list of objective circumstances that were potentially relevant when addressing excessive force claims by pretrial detainees:

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id. Kingsley* also reaffirmed that pretrial detainees cannot be subjected to "the use of excessive force that amounts to punishment," *id.* (quoting *Graham*, 490 U.S. at 395 n.10), precisely because they "cannot be punished at all," *id.* at 2475.

Plaintiff's allegations concerning the use of force by Defendants Crosby and Rich in placing and keeping Plaintiff in a restraint chair for one-and-one-half or two hours, notwithstanding his claims of pain and numbness, are sufficient to state a substantive due process claim under *Kingsley*. In addition, Plaintiff's allegation that Defendant Wildfong intentionally and unnecessarily slammed Plaintiff's face into the wall twice is sufficient to state a substantive due process claim under *Kingsley*.

Neither the Sixth Circuit nor the Supreme Court has clearly indicated whether the deliberate-indifference standard of the Eighth Amendment (requiring both objective and subjective components), which traditionally has been applied to prison detainees' conditions-of-confinement claims (such as denials of medical care or cell conditions), is affected by the holding in *Kingsley*. *See Martin v. Warren Cty.*, No. 19-5132, 2020 WL 360436, at *4 n.4 (6th Cir. Jan. 2, 2020) (declining to address the question) (citing *Richmond v. Huq*, 885 F.3d 928, 937 n.3 (6th Cir. 2018) (observing that *Kingsley* calls into serious doubt whether a pretrial detainee must demonstrate the subjective element of the deliberate-indifference standard, but not reaching the issue)). Nevertheless, the Sixth Circuit has, in certain unpublished decisions, continued to apply the deliberate-indifference standard without considering *Kingsley*. *See McCain v. St. Clair Cty.*, 750 F. App'x 399, 403 (6th Cir. 2018); *Medley v. Shelby Cty. KY.*, 742 F. App'x 958, 961 (6th Cir. 2018).

Other circuits have split on the question. The Fifth, Eighth, and Eleventh Circuits have retained the deliberate-indifference standard when analyzing Eighth Amendment claims that fall outside the excessive-force context. *Whitney v. City of St. Louis*, 887 F.3d 857, 860 n.4 (8th Cir. 2018) (retaining the deliberate indifference standard in medical); *Dang ex rel. Dang v. Sheriff, Seminole Cty.*, 871 F.3d 1272, 1279 n.2 (11th Cir. 2017); *Alderson v. Concordia Par. Corr.*

19

*Facility*, 848 F.3d 415, 419 n.4 (5th Cir. 2017). In contrast other courts of appeal have changed their standards in light of *Kingsley*. *See Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018); *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017); *Castro v. Cty. of L.A.*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc).

At this juncture, the Court concludes that Plaintiff's allegations about the conditions Plaintiff faced in segregation are sufficient to go forward.

## **Conclusion**

The Court will deny Plaintiff's first motion to amend the complaint (ECF No. 10) and grant Plaintiff's second motion to amend the complaint (ECF No. 11). Having conducted a review of the amended complaint as required by the Prison Litigation Reform Act, the Court determines that Defendants Unknown Party and Ashcroft will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court also will dismiss for failure to state a claim Plaintiff's equal protection and procedural due process claims against the remaining Defendants. The Court will serve the amended complaint against Defendants Rich, Crosby, and Wildfong.

An order consistent with this opinion will be entered.

Dated: February 27, 2020  /s/ Janet T. Neff
Janet T. Neff
United States District Judge