UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRELL CHURCHWELL #21369-040,

    Plaintiff,                                            Hon. Janet T. Neff

v.                                                                Case No. 1:19-cv-819

ADAM RICH, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION; ORDER**

Plaintiff Terrell Churchwell, a federal prisoner currently incarcerated with the Bureau of Prisons at Oxford Federal Correctional Institution, has sued Newaygo County Jail (NCJ) employees Adam Rich, April Crosby, and Rocky Wildfong pursuant to 42 U.S.C. § 1983, alleging that they violated his constitutional rights based on events that occurred at NCJ while Churchwell was housed there as a pretrial detainee pending federal criminal charges. Churchwell's remaining claims in this case are that: (1) Defendants Crosby and Rich used excessive force by placing and keeping him in a restraint chair for one-and-one-half to two hours; (2) Defendant Wildfong intentionally and unnecessarily slammed his face into a wall twice and used excessive force in pinning him to his bed with his knees; and (3) Defendants imposed unconstitutional conditions of confinement on him.

Now before me is Defendants' Corrected Motion for Summary Judgment (ECF No. 53), to which Churchwell has responded (ECF No. 57) and Defendants have replied (ECF No. 58). Churchwell has also filed a surreply (ECF No. 60), which I will disregard, as Churchwell filed it

without leave of court.[1] Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that Defendants' motion be **GRANTED IN PART AND DENIED IN PART**.

Also before me is Churchwell's motion for spoliation sanctions, as taken from ECF No. 34. Defendants will have 14 days from the date of this order to provide competent evidence supporting the facts averred in their response to the motion for spoliation (ECF No. 37, PageID.202-03).

## I. Background

On October 3, 2016, Churchwell was arrested in connection with an indictment filed in the Western District of Michigan charging him with being a felon in possession of a firearm. Churchwell was detained in the NCJ while the federal case was pending.

Churchwell had issues with other prisoners at NJC, including his cellmates. (ECF No. 14 at PageID.104; ECF No. 53-1 at PageID.459–60.) On January 25, 2017, Churchwell was moved from cell A-7 to cell A-1 due to an issue with his cellmates. As Churchwell unpacked his belongings in his new cell, he noticed that his ramen noodles and chips were missing. Churchwell yelled through the food slot to get the floor officer's attention, and Officer Lake responded. At Churchwell's request, Officer Lake returned to Churchwell's old cell to ask his cellmates about the missing items. After speaking to the cellmates, Officer Lake reported to Churchwell that they had no knowledge of the missing food. Churchwell asked Officer Lake to review the video camera in the area of his prior cell, but Lake refused and left.

---

[1] Western District of Michigan Local Civil Rule 7.2(c) authorizes an opening brief by the moving party, a response by the non-moving party, and a reply by the moving party. Although the rule provides that "[t]he court may permit or require further briefing," it does not grant an automatic right to file additional briefs. Instead, a party seeking to submit a surreply must obtain the Court's permission to do so.

Churchwell yelled for Lake again a few minutes later, complaining loudly about his missing food. Lake returned to Churchwell's cell, and in response to Churchwell's request, radioed Defendant Cpl. Crosby. Churchwell asked Defendant Crosby to review the video recording, but she refused. However, Lake and Defendant Crosby agreed to go talk to Churchwell's previous cellmates. When they returned, Defendant Crosby told Churchwell the cellmates did not provide any information. (ECF No. 53-1 at PageID.474.) Churchwell then asked Defendant Crosby to speak with Defendant Sgt. Rich, but she declined to do so, stating that her investigation was sufficient. (ECF No. 14 at PageID.105; ECF No. 53-1 at PageID.474.) Churchwell became "upset" and began yelling for Defendant Rich and banging on or kicking his cell door. (ECF No. 53-1 at PageID.475–76.) Churchwell gave Defendant Crosby an "ultimatum"—either she would contact Defendant Rich, or he would continue banging on the door and yelling for Defendant Rich. Defendant Crosby then left, but Plaintiff continued yelling and became "disgruntled" and "very upset." (*Id.* at PageID.478.)

After some time, Defendants Rich, Crosby and Wildfong appeared at Churchwell's cell, along with other officers. Churchwell tried to explain why he was banging on his cell door, but Defendant Rich told him to place his hands on the wall. (*Id.* at PageID.478.) Churchwell claims that he complied "immediately," and officers entered the cell, placed him in handcuffs, and secured him in a restraining chair that was brought into the cell. (*Id.* at PageID.479–80.) Defendant Rich told Churchwell that he could remain restrained in the chair for as long as two hours, depending on how quiet he was.

After the officers left the cell, Churchwell continued to yell for attention. Eventually, Officer Lake and Defendant Crosby returned to check on him. (*Id.* at PageID.483.) Churchwell complained that he was dizzy, having pains, and not feeling like himself. Defendant Crosby

checked the restraints for tightness. When Officer Lake began to remove the handcuffs, Defendant Crosby told him to put them back on. (*Id.*) Churchwell began yelling again, and the officers left the room. He remained in the chair for nearly two hours. (*Id.* at PageID.483–84.)

Churchwell was "upset" when Defendants Rich, Crosby, and Wildfong and Officer Lake returned to the cell because Defendant Crosby was "still smirking at [him]." (*Id.* at PageID.484.) Defendant Rich informed Churchwell that he would be taken to segregation because of his continued disruptive behavior. (*Id.* at PageID.486.) Officer Lake and Defendant Wildfong then escorted Churchwell through the hallway to segregation, each one holding an arm. (*Id.* at PageID.488.) As Churchwell approached Defendant Crosby, who was holding a door open, he became agitated after noticing her "smirking" at him and called her a "cunt." Churchwell alleges that, immediately after he made the remark, the officers slammed him into the wall and smashed his face against it. (*Id.* at PageID.486–88.) Defendant Wildfong then pulled Churchwell's head back again and slammed his face into the wall a second time, although Churchwell was able to turn his head so that the left side of his face hit the wall, avoiding directly hitting his nose or eyes. (*Id.* at PageID.489–91.) While this was occurring, Defendant Wildfong told Plaintiff, "Don't ever call her that again mother fucker." Other officers said, "I can't believe he called her that," and "[W]hat were you thinking?" Churchwell began to bleed from the mouth due to the contact with the wall. (*Id.* at PageID.491.)

After this incident, the officers continued escorting Churchwell to segregation. When they arrived, Churchwell was yelling, screaming about the officers causing him to bleed, and crying. Because Churchwell appeared aggressive, Defendant Wildfong and other officers pinned him down on the bunk with their hands and knees on his neck, back, legs, and ankles while they removed the handcuffs. (*Id.* at PageID.491–92.) Churchwell denies stomping on his bunk,

4

pounding on the walls, kicking the toilet, or attempting to spit at Defendant Rich, although he admits screaming at the officers. (*Id.* at PageID.492–93.)

Shortly after the incident, a nurse evaluated Churchwell, noting an abrasion on his chin and a small cut on the inside of his lower lip. The nurse cleaned the abrasion and applied ointment and a band aid. (ECF No. 43-1.) Churchwell claims that he suffered lacerations on the top and bottom of his lips, facial swelling, and a chipped tooth. (*Id.* at PageID.463–64, 469–70.)

Churchwell remained in segregation until March 2, 2017. During this time, he was given access to his legal work, hygiene products, a mat, and a bedroll. (ECF No. 53-3 at PageID.525.) Although Churchwell lost privileges while in segregation, including commissary access and visitation and was limited to one phone call per day by collect call, he was allowed to have letter writing materials, to send and receive his mail, and to watch CNN on the television. (ECF No. 53-1 at PageID.501, 507, 509–510; ECF No. 53-3 at PageID.525; ECF No. 53-5 at PageID.529.)

## II. Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III.  Discussion

#### A.  Excessive Force Claim

Churchwell's excessive force claims are that: (1) Defendants Crosby and Rich used excessive force against him by placing him and keeping him in the restraint chair; and (2) Defendant Wildfong used excessive force by intentionally and unnecessarily slamming his face into the wall twice and by pinning him to the bed with his knee. Defendants contend that they are entitled to qualified immunity on these claims.

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

6

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second step. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (cleaned up) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). "'[C]learly established law' may not be defined at such 'a high level of generality.'" *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 992 (6th Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). "[A] plaintiff must identify a case with a similar fact pattern that would have given 'fair and clear warning to officers' about what the law requires." *Id.* (quoting *White*, 137 S. Ct. at 552). Stated differently, "[o]n both the facts and the law, specificity is [a court's] guiding light." *Novak v. City of Parma*, 932 F.3d 421, 426 (6th Cir. 2019).

Churchwell was a pretrial detainee, so his claim arises under the Substantive Due Process Clause of the Fourteenth Amendment. *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). Because the claim is not measured under the Eighth Amendment, the subjective prong of the Eighth Amendment deliberate indifference standard does not apply. Instead, the relevant inquiry is whether the force purposely or knowingly used against the prisoner was objectively unreasonable. *Id*. at 2473-74; *see also Coley v. Lucas Cnty.*, 799 F.3d 530, 538 (6th Cir. 2015) (citing *Kingsley*). This inquiry is "highly fact-dependent" and "must take into account the 'perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight.'" *Coley*, 799 F.3d at 538 (quoting *Kingsley*, 576 U.S. at 397). It must also consider the government's "legitimate interests" in managing correctional facilities in order "to

7

preserve internal order and discipline and to maintain institutional security." *Coley*, 799 F.3d at 538 (internal quotations omitted). The *Kingsley* Court further provided:

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. We do not consider this list to be exclusive. We mention these factors only to illustrate the types of objective circumstances potentially relevant to a determination of excessive force.

*Kingsley*, 576 U.S. at 397 (internal citations omitted). Both *Kingsley* and *Coley* stated that "pretrial detainees cannot be subjected to 'the use of excessive force that amounts to punishment,' precisely because they 'cannot be punished at all.'" *Coley*, 799 F.3d at 538 (quoting *Kingsley*, 576 U.S. at 400). "The calculus of reasonableness must embody allowance for the fact that [jail] officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. The analysis therefore includes a "built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Mullins v. Cyranek*, 805 F.3d 760, 766 (6th Cir. 2015) (internal quotation marks omitted). At bottom, a court's focus is not on the extent of the injury, but "whether 'gratuitous violence' has been inflicted." *Coley*, 799 F.3d at 539 (quoting *Pigram ex rel. Pigram v. Chaudoin*, 199 F. App'x 509, 513 (6th Cir. 2006)).

In a case such as this, involving multiple uses of force, the court must assess the reasonableness of each use of force "in chronological 'segments.'" *Hanson v. Madison Cnty. Detention Ctr.*, 736 F. App'x 521, 529 (6th Cir. 2018) (quoting *Dickerson v. McClellan*, 101 F.3d 1151, 1162 (6th Cir. 1996)).

### 1.     Restraint Chair—Defendants Crosby and Rich

Defendants Crosby and Rich contend that they are entitled to summary judgment on Churchwell's excessive force claim based on his placement in the restraint chair and his complaints of pain, dizziness, and/or tight handcuffing when Crosby and Officer Lake checked on him because Churchwell has failed to demonstrate both a constitutional violation and that the law was clearly established.

Churchwell failed to address these arguments in his response. It is thus appropriate to treat his claims against Defendants Crosby and Rich arising out of the use of the restraint chair as abandoned. The Sixth Circuit has fully endorsed this approach, noting: "This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013); *see also Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011) (finding that "[t]he district court properly declined to consider the merits of [plaintiff's] claim because [plaintiff] failed to address it in . . . his response to the summary judgment motion"); *Clark v. City of Dublin*, 178 F. App'x 522, 524–25 (6th Cir. 2006) (holding that the district court properly concluded that plaintiff abandoned claims where his opposition to summary judgment "did not properly respond to the arguments asserted" by defendant); *Conner v. Hardee's Food Sys., Inc.*, 65 F. App'x 19, 24 (6th Cir. 2003) (concluding that the plaintiff abandoned a claim where he "failed to brief the issue before the district court"). Here, while Churchwell's brief addresses his excessive force claims against Defendant Wildfong, he wholly fails to respond to the arguments Defendants Crosby and Rich put forth in support of summary judgment on the restraint chair claim.

Regardless, even if Churchwell had not abandoned this claim, Defendants Crosby and Rich are entitled to summary judgment because the evidence fails to demonstrate a constitutional

violation. "A restraint chair may be properly used to restore control over an individual who is in custody or to prevent such an individual from harming himself." *Fletcher v. Vandyne*, No. 2:07-CV-325, 2009 WL 1687956, at *14 (S.D. Ohio June 11, 2009) (citing *Fuentes v. Wagner*, 206 F.3d 335 (3d Cir. 2000); *Morrison v. Stephenson*, No. 2:06-cv-283, 2008 WL 114890, at *3 (S.D. Ohio, Jan. 9, 2008); *Pillette v. County of Otsego*, No. 06-10536, 2007 WL 851330, *9 (E.D. Mich., Feb. 27, 2007)). Churchwell concedes that he gave Defendant Crosby an "ultimatum" that he would continue banging on the door and yelling for Defendant Rich if she did not get him. Churchwell made good on his threat by creating a disturbance in the jail and potentially jeopardizing his own safety by continuing to bang loudly on the cell door. Under these circumstances, Defendants' decision to restrain Churchwell for two hours was not objectively unreasonable. Moreover, Churchwell has not shown that use of the restraint chair violated clearly established law. *See Hanson v. Madison Cnty. Det. Ctr.*, 736 F. App'x 521, 533 (6th Cir. 2018) (concluding that the plaintiff failed to meet his summary judgment burden of demonstrating that use of a restraint chair for three hours violated clearly established law). Likewise, Churchwell fails to show that Defendants violated clearly established law as to his complaints of dizziness, pain, and tight restraints. This is particularly true given the absence of any demonstrable injury arising from use of the restraint chair.[2]

Accordingly, I recommend that Defendants Crosby and Rich are entitled to summary judgment on this claim.

---

[2] As Defendants correctly note, in the Fourth Amendment context, a plaintiff can survive summary judgment on a tight handcuffing claim if he can show that he experienced some physical injury resulting from the handcuffing. *Morrison v. Board of Trs. of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009) (citing *Lyons v. City of Xenia*, 417 F.3d 565, 575-76 (6th Cir. 2005)). There is no reason to believe that a similar requirement would not apply in the context of a pretrial detainee, as the extent of the plaintiff's injury is a consideration that informs the reasonableness inquiry. *Kingsley*, 576 U.S. at 397.

### 2. Hallway Incident—Defendant Wildfong

Defendants argue that Defendant Wildfong is entitled to summary judgment on Churchwell's claim that Wildfong twice slammed his face into the wall because Churchwell was so upset and agitated that he resorted to verbal hostility towards Defendant Crosby within the confined space of a doorway, rendering the applied force reasonable. Defendants cite *Hanson*, *supra*, as presenting comparable circumstances. *Hanson*, however, is distinguishable in several respects. First, unlike this case, the defendants in *Hanson* presented a video of the incident for the court to consider, which fairly depicted the plaintiff's behavior and the officers' responses. 736 F. App'x at 529–30. Here, the Court has only the parties' versions of the events before it and, therefore, must accept Churchwell's version as true for purposes of the instant motion. Second, there is no indication from the facts that the plaintiff in *Hanson* was restrained or handcuffed when the deputy shoved him into the wall. In fact, the court noted that the video showed the plaintiff turning toward the officers with something in his hand and taking an aggressive stance. *Id.* at 530. Finally, the plaintiff's actions in *Hanson* demonstrated a greater level of resistance, as he slammed items on a table, verbally refused to obey a command, and turned toward the officers with something in his hand, stating, "I ain't dropping no fucking attitude." *Id.* at 531.

According to Churchwell's version of events, he was handcuffed and shackled, and two officers had him by the arms, when he called Defendant Crosby a vulgar name in a barely audible voice as he approached or passed her in or near a doorway, at which point his head was immediately slammed into the wall twice. Churchwell denies trying to headbutt Defendant Crosby. At the time of the incident in question, it was clearly established that pretrial detainees had a right not to be gratuitously assaulted while fully restrained and subdued. *Coley*, 799 F.3d at 540 (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)).

Although Defendants contend that the level of force was reasonable because Churchwell exhibited verbal resistance and defiance toward the officers, I conclude that a genuine issue of material fact remains such that a reasonable jury could find on this record that Churchill was not actively resisting orders and that the force that Defendant Wildfong used was unreasonable, even if Churchwell exhibited verbal hostility toward Defendant Crosby. *See Jackson v. Washtenaw Cnty.*, 678 F. App'x 302, 306 (6th Cir. 2017) (active resistance "can be characterized by physical force, a show of force, or verbal hostility coupled with failure to comply with police orders"). Under Churchwell's version, there is no indication that he physically threatened Defendant Crosby or the other officers or that he verbally resisted an order.

The circumstances here are similar to those in *Cordell v. McKinney*, 759 F.3d 573 (6th Cir. 2014), a case arising under the Eighth Amendment. In *Cordell*, following a verbal altercation between the plaintiff and the defendant, McKinney, McKinney ordered the plaintiff out of his cell and handcuffed him for a move to a holding cell on the third floor. Other officers accompanied McKinney as he escorted the plaintiff, walking behind him and raising his handcuffed hands up toward his shoulders in a submissive-style hold. According to the plaintiff, as they proceeded down the hallway, McKinney kept pushing him faster, so the plaintiff tried to turn around to see why McKinney was pushing him so fast. *Id.* at 577. In response, McKinney rammed the plaintiff headfirst into a wall, causing a laceration on the plaintiff's forehead, as well as severe neck and back pain. A security camera video had recorded most of what occurred in the hallway but did not show the moment that McKinney ran the plaintiff into the wall. *Id.* at 578. The court said that, because it was undisputed that the plaintiff turned to face McKinney, McKinney had a reasonable basis for using force against the plaintiff. But the court noted that the relationship between the need for force and the amount of force used was an open question. This was due to the parties' differing

12

versions regarding the amount of force that McKinney used. *Id.* Nonetheless, the court found that, based on the plaintiff's version, a reasonable jury could find that McKinney lacked a good faith basis to employ the force he did. *Id.* at 582. First, the court observed that the plaintiff's injuries indicated that McKinney used a considerable amount of force. Second, the court found that a reasonable jury could conclude that the amount of force used was out of proportion to what was needed because the plaintiff's hands were handcuffed behind his back and McKinney had the plaintiff in a submission hold. In addition, the only other people in the hallway were two corrections officers. *Id.* at 583. Here, according to Churchill, in response to his use of a vulgarity toward Defendant Crosby, Defendant Wildfong slammed his face into the wall twice, resulting in lacerations and a chipped tooth. Although Defendants argue that *Cordell* is distinguishable because the case involved striking a "neutralized" subject, the facts here show that Churchill was arguably even more "neutralized" than the plaintiff in *Cordell*, as he was handcuffed, shackled, and physically secured by two officers.

Accordingly, I recommend that the Court deny Defendant Wildfong summary judgment on this claim because a genuine issue of material fact precludes qualified immunity.

### 3. The Bed—Defendant Wildfong

Defendants argue that Defendant Wildfong is entitled to qualified immunity on Churchwell's claim that he used excessive force by "pinning" him to the bed with his knee. I agree.

It is undisputed that when the officers arrived with Churchwell at the segregation cell, he was upset and screaming at the officers. Defendant Wildfong and the other officers did not act unreasonably in briefly restraining him on his bed with their hands and knees while they removed the handcuffs. Churchwell was obviously in a state of agitation and restraining him served a legitimate purpose—to allow the officers to remove the handcuffs without risking injury from a

prisoner who was upset and screaming at them. Moreover, Churchwell fails to present any evidence that he suffered an injury as a result of this brief restraint.[3]

Therefore, I recommend that the Court grant summary judgment to Defendant Wildfong on this claim.[4]

### B.     Conditions of Confinement

Churchwell fails to address most of his allegations regarding his conditions-of-confinement claims. Accordingly, the portion of this claim relying on these allegations is deemed abandoned. *See Brown*, 545 F. App'x at 372.

The only aspects of this claim that Plaintiff mentions are: (1) his claim against Defendant Wildfong for denying him one meal; and (2) denial of exercise while in segregation by Defendant Rich. Because unreported decisions from the Sixth Circuit continue to adhere to the deliberate-indifference standard in conditions-of-confinement claims, *see McCain v. St. Clair Cnty.*, 750 F. App'x 399, 403 (6th Cir. 2018); *Medley v. Shelby Cnty.*, 742 F. App'x 958, 961 (6th Cir. 2018); *see also Cameron v. Bouchard*, 815 F. App'x 978, 984–85 (6th Cir. 2020) (declining to decide whether *Kingsley* controlled jail detainees' challenge to COVID-19 precautions and holding that, at a minimum, a violation of due process required more than simple negligence), I consider Churchwell's claim under that standard.

Churchwell's claim that Defendant Wildfong deprived him of a single meal fails to establish a constitutional violation. Numerous Sixth Circuit decisions have held that missing a few

---

[3] In light of this conclusion, I need not address Defendants' argument that Churchwell's claim is barred by 42 U.S.C. § 1997e based on lack of a physical injury.

[4] Churchwell's argument that Defendants never responded to the additional interrogatory that the Court granted in the December 9, 2020 Order (ECF No. 47) is both incorrect and irrelevant. First Defendants provided their responses on January 8, 2021. (ECF No. 56.) Moreover, the information sought in the interrogatory would not have affected the disposition of Defendants' motion for summary judgment.

meals over a short period of time, or being provided a reduced number of meals for a few weeks, did constitute an unconstitutional condition of confinement. For example, in *Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam), the Sixth Circuit held that the plaintiff's allegation of being provided only one meal a day for fifteen consecutive days did not give rise to an Eighth Amendment violation where the one meal he did receive on those days provided sufficient nutrition to sustain normal health. In *Davis v. Miron*, 502 F. App'x 569 (6th Cir. 2012), the court held that missing seven meals over the course of six days "does not rise to the level of an Eighth Amendment violation." *Id.* at 570. And, in *Richmond v. Settles*, 450 F. App'x 448 (6th Cir. 2011), the court held that being deprived of seven meals over six consecutive days while on Behavioral Management did not state a viable Eighth Amendment claim, because the prisoner did "not allege that his health suffered as a result of the meal deprivation." *Id.* at 456. Here, Churchwell does not allege that his health suffered as a result of missing one meal, nor has he shown that the remaining meals he received that day failed to provide him with adequate nutrition. Finally, Defendant Wildfong is entitled to qualified immunity as Churchwell fails to cite any clearly established law that would have put Defendant Wildfong on notice that his act of depriving a prisoner of a single meal amounts to a constitutional deprivation.

As for Churchwell's inadequate exercise claim against Defendant Rich, Churchwell fails to show that Defendant Rich had the requisite personal involvement to impose liability under Section 1983. It is well established in the Sixth Circuit that to state a cognizable claim under Section 1983, a plaintiff must allege personal involvement by each of the named defendants. *See Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995). A plaintiff must present evidence of the defendant's involvement in the alleged constitutional deprivation to defeat a summary judgment motion. *Bennett v. Schroeder*, 99 F. App'x 707, 713 (6th Cir. 2004); *see also Lentz v. Anderson*,

888 F. Supp. 847, 850 (N.D. Ohio 1995) ("Because there is no evidence that Governor Voinovich, Department of Rehabilitation and Correction Director Wilkinson, OPI Director Anderson, and OPI Manager Mustard were personally involved in the prison's decision-making process which led to plaintiff's allegations of cruel and unusual punishment, they will be dismissed from any § 1983 liability."). Although Defendant Rich is a Sergeant at NCJ, Churchwell has not shown that he was involved in the decision-making process concerning the amount of exercise that prisoners in segregation are afforded.

Even if Churchwell had shown that Defendant Rich had the requisite involvement, I recommend that the Court conclude that Rich is entitled to qualified immunity. "Physical exercise is a necessity of civilized life. Unnecessary or extreme restriction of inmates' opportunity for fresh air, exercise and recreation may rise to the level of an Eighth Amendment violation." *Jones v. Stine*, 843 F. Supp. 1186, 1192 (W.D. Mich. 1994) (citing *Walker v. Mintzes*, 771 F.2d 920, 927 (6th Cir. 1985); *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983); *Pressley v. Brown*, 754 F. Supp. 112, 116 (W.D. Mich. 1990)). The Sixth Circuit has declined to set a constitutionally required minimum amount of exercise, instead observing that a court should consider factors such as "the size of the cell, opportunity for contact with other inmates, time per day expended outside the cell, justifications for denial of the right to exercise, physical or psychological injuries resulting from a lack of exercise or a particularized need for exercise." *Patterson*, 717 F.2d at 289. The Sixth Circuit has also recognized that penological justification could support a deprivation of "total or near-total" exercise. *Rodgers v. Jabe*, 43 F.3d 1082, 1088 (6th Cir. 1995). Defendants have presented a diagram of a cell that is the same size as the cell that Churchwell occupied while he was housed in segregation in 2017, which shows cell dimensions of approximately eight feet by about eleven feet. (ECF No. 53-7 at PageID.545; ECF No. 53-8.) Although Churchwell disputes

16

the layout of the diagram, it nonetheless shows that Churchwell had sufficient room for *some* in-cell exercise. Defendants have also presented evidence showing that Churchwell continued to engage in acts of misbehavior throughout the time he was in segregation in January and February 2017, indicating a need to restrict his movement. (ECF No. 53-6.)

On the other hand, Churchwell has not shown that he suffered any negative physical or mental effects as a result of the lack of exercise during his 36-day stay in administrative segregation, nor has he shown that he had a particularized need for exercise. Churchwell fails to show that as of February 2017, a denial of out-of-cell exercise for 36 days violated clearly established law under the facts presented here. For example, in *Rodgers*, the Sixth Circuit concluded that the defendants were entitled to qualified immunity for not allowing an inmate in punitive segregation out-of-cell exercise for 31 days. 43 F.3d at 1089; *see also Brown v. Prelesnik*, No. 1:12-cv-873, 2013 WL 838289, at *15 (W.D. Mich. Mar. 6, 2013) (concluding that the plaintiff's allegation that he was deprived of outdoor exercise for a little more than a month failed to allege a constitutional violation).

Accordingly, I recommend that Defendant Rich is entitled to summary judgment on this claim.

### C. Spoliation

As noted, Churchwell moves for spoliation sanctions against Defendants for failing to preserve video of the restraint chair incident that occurred in his cell and the incident in the hallway in which Defendant Wildfong slammed his face into the wall. Plaintiff requested video recordings of these incidents in his request for production of documents dated April 4, 2020. (ECF No. 37-1 at PageID.208–09.) Defendants responded that there are no video or sound recordings of those incidents. (*Id.* at PageID.209.) Defendants stated in their response to Churchwell's motion that the 2017 video system at NCJ saved video files for 30 days and then recorded over them. Defendants

point out that Churchwell did not initiate this case until more than two years after the incident. (ECF No. 37 at PageID.202.)

Although Defendants have responded with the above proffered facts, they have not submitted any competent evidence (by affidavit or otherwise) in response. Instead, they attach only their response to plaintiff's request for production, which is not verified. (ECF No. 37-1, PageID.208-09.) That is insufficient, in these circumstances, for the Court properly to weigh the motion. As such, Defendants will have 14 days from the date of this order to provide any affidavit or other evidence supporting the facts averred in their opposition to the motion.

### IV.   Conclusion

For the reasons set forth above, I recommend that the Court **grant in part and deny in part** Defendants' corrected motion for summary judgment. (ECF No. 53.) In particular, I recommend that the motion be **granted** with regard to Churchwell's excessive force claim against Defendants Crosby and Rich based on the restraint chair incident and with regard to his conditions-of-confinement claim, and that the motion be **denied** with regard to his excessive force claim against Defendant Wildfong.

As to Churchwell's motion for spoliation sanctions (ECF No. 34), Defendants will have 14 days from the date of this order to provide any affidavit or other evidence supporting their opposition to the motion. It is **so ordered**.

Dated: June 29, 2021                                      /s/ Sally J. Berens
                                                          SALLY J. BERENS
                                                          U.S. Magistrate Judge

### **NOTICE TO PARTIES**

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file

objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).